Rockingham
No. 95-287

## JANE L. MILETTE

### v.

## NEW HAMPSHIRE RETIREMENT SYSTEM

September 30, 1996

*James E. Ritzo, P.A.*, of Portsmouth (*James E. Ritzo* on the brief and orally), for the petitioner.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Claudia C. Damon* on the brief and orally), for the respondent.

BROCK, C.J. The petitioner, Jane L. Milette, appeals the Superior Court (*Goode*, J.) denial of her petition for a writ of certiorari. Her petition had sought review of the decision by the respondent, New Hampshire Retirement System, denying her request to include severance pay in the computation of her retirement benefits. We reverse and remand.

The facts are undisputed, except as noted. The petitioner was employed as a teacher by the Portsmouth School Department for thirty-one years until her retirement effective July 1, 1992. Upon retirement, she was entitled to severance pay of $34,318, but this amount was not actually paid to her until a year after her actual retirement.

Before giving her notice, the petitioner had consulted with staff employed by the respondent regarding what monthly benefits she

could expect based on various assumptions about when she would retire. The staff counseled her and provided her with estimates of her retirement earnings. Such estimates indicated that the projections were preliminary and subject to modification. After the petitioner retired and her severance pay was not received for one year, the respondent calculated her retirement award without including her severance pay in the calculations, resulting in an award substantially less than the petitioner had expected.

The petitioner's request for administrative review of her case was unsuccessful. The respondent's staff advised the petitioner that 1991 legislation required payment of severance *at termination* or else it could not be included in the calculation of benefits. This decision was upheld by the respondent's board of trustees, although it acknowledged that, in some situations, "amounts paid after separation from service," *see* N.H. ADMIN. RULES, Ret 310.03(b), would be included to the extent that the delay was a product of the "customary and usual processing delay." The petitioner filed a petition for a writ of certiorari in the superior court, which was dismissed. This appeal followed.

■ ■ "Because RSA [chapter] 100-A does not provide for judicial review, a writ of certiorari is the sole remedy available to a party aggrieved by a decision of the board of trustees" of the New Hampshire Retirement System. *Hardy v. State*, 122 N.H. 587, 589, 448 A.2d 382, 384 (1982). The reviewing court will grant relief where the board of trustees has acted illegally with respect to jurisdiction, authority, or observance of the law, has abused its discretion, or has acted arbitrarily, unreasonably, or capriciously. *Id.* The issue on appeal in this case is whether the reviewing court properly interpreted the applicable statute.

The retirement allowance for teachers like the petitioner is defined in terms of "average final compensation." RSA 100-A:5, I(b) (1990). "Average final compensation," in turn, is defined as the average annual "earnable compensation" of a member during his or her highest three years of creditable service. RSA 100-A:1, XVIII (1990). The question in this case is whether the petitioner's severance pay should be included in her "earnable compensation" for her last year of service.

RSA 100-A:1, XVII (Supp. 1995) states in relevant part:

> "Earnable compensation" shall mean for all members the full base rate of compensation paid plus *any* overtime pay, holiday and vacation pay, sick pay, longevity or *severance pay*, . . . and other compensation paid to the member by the employer . . . . However, earnable compensation in the

final 12 months of creditable service prior to termination of employment shall be limited to 1-½ times the higher of the earnable compensation in the 12-month period preceding the final 12 months or the highest compensation year as determined for the purpose of calculating average final compensation, but excluding the final 12 months.

(Emphasis added.) The cap on the final year's "earnable compensation," contained in the last sentence quoted above, was added to subparagraph XVII by a 1991 amendment. *See* Laws 1991, 313:1. The cap applies to any termination of employment after December 31, 1991, Laws 1991, 313:7, unless it is covered by the grandfather clause, which provides:

[I]f the retiring member has *received* severance pay *at termination* and demonstrates to the satisfaction of the New Hampshire retirement system board of trustees that all or part of such severance pay was based on . . . [certain] credits earned on account of service rendered before [June 30, 1991], then such portion of the severance pay shall be *exempt* from the limitation on earnable compensation. In case of doubt as to the interpretation of service data in determining when credits were earned, the data shall be interpreted to the best interest of the retiring member.

*Id.* (emphasis added).

■■ The respondent relies on the first above-quoted sentence of the grandfather clause for the proposition that the general definition of "earnable compensation" in subparagraph XVII does not include severance pay unless it is actually paid "at termination." We disagree. "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Astro Spectacular*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994) (quotation and citation omitted). Subparagraph XVII contains no reference to any requirement that the employee's severance pay be paid "at termination," or by any other deadline, in order to be included in the calculation of the employee's retirement benefits. The plain meaning of the words "any . . . severance pay," with no time frame set forth in the statute for actual payment of such pay, is that the calculation of retirement benefits should take into account *any* severance pay, regardless of whether the retiree received that severance pay "at termination" or at some later date.

■ The respondent contends that the language of the grandfather clause sheds light on the legislature's intent in subparagraph

XVII. It is true that statutes are construed not in isolation but in the context of the overall statutory scheme. *See State v. Farrow*, 140 N.H. 473, 475, 667 A.2d 1029, 1031 (1995). The grandfather clause, however, merely contains an exception to the general statutory rules during a transitional period; the clause does not apply to all retirees and will eventually become vestigial. *See* Laws 1991, 313:7. In contrast, subparagraph XVII is generally applicable to all calculations of retirement benefits regardless of the date of retirement. Thus, even if, in the case of a transitional retiree, the "received . . . at termination" language in the grandfather clause were read to render that clause inapplicable unless severance pay is actually paid on or before the date of termination, it cannot be read to limit subparagraph XVII's calculation of retirement benefits for all retirees.

The board acknowledges, in its final decision in the petitioner's case, that "[t]here are situations where payments received after the last twelve months of employment are included in earnable compensation." The board referred to New Hampshire Administrative Rules, Ret 310.03(b), which requires the board to consider, in its calculations, severance paid "after separation from service." The respondent argues in its brief, however, that inclusion of such delayed payments is merely "a recognition of the realities of the workplace," and "should be understood to allow for no more than the customary and usual processing delay that terminating employees experience in receiving final payment from the employer."

██ ██ The respondent's argument apparently concedes that the statute, RSA 100-A:1, XVII, does not preclude it from considering a retiree's severance pay if it was accrued but not actually paid at termination. The respondent, however, asks us to defer to its interpretation of Ret 310.03 as requiring severance pay to be actually paid within "the customary and usual" time frame, in order to be included in the calculation of retirement benefits. The rule on its face contains no such limit on the time by which severance pay must be received. It includes "amounts paid after separation from service," specifically including severance pay, in determining the amount of a member's earnable compensation. *See* N.H. ADMIN. RULES, Ret 310.03(b). Nothing in the plain language of the rule distinguishes a delay of several weeks from a delay of one year in the actual payment of severance pay. While we would accord deference to an agency's interpretation of its own rule where there was some ambiguity or inconsistency in the rule, *Petition of Pelletier*, 125 N.H. 565, 569, 484 A.2d 1119, 1121 (1984), we will not permit an agency to add or delete requirements — without properly

promulgating an amended rule — through the mere expedient of "interpreting" a rule that is clear and unambiguous on its face, *see id.; cf.* RSA 541-A:3 (Supp. 1995) (procedure for adopting rules). "[A]n agency's interpretation of its own regulations is erroneous as a matter of law when it fails to embrace the plain meaning of its regulations." *Attitash Mt. Service Co. v. Schuck*, 135 N.H. 427, 429, 605 A.2d 1067, 1069 (1992).

■ ■   The respondent's interpretation of Ret 310.03 to include some delayed payments but not others is also inconsistent with the statute itself. Nothing in the language of the statute indicates that some delayed payments are includable and others not includable in the calculation of retirement benefits, whether such delays be "customary and usual processing delays" or otherwise. *See* RSA 100-A:1, XVII. Thus, even if we were to read Ret 310.03 as implying such a distinction, the rule would exceed the scope of the respondent's authority under the statute, which contains no such distinction. The legislature's grant of rulemaking authority to an agency is not a grant of power to change or modify statutory law by regulation. *See In re Jack O'Lantern, Inc.*, 118 N.H. 445, 448, 387 A.2d 1166, 1168 (1978). We conclude, therefore, that the respondent erred as a matter of law when it excluded the petitioner's severance pay from its calculation of her retirement benefits on the basis that the severance pay was not actually paid on the date of termination.

■   Finally, because the issue of applying the 150% earnings cap will arise on remand, we address it here to provide guidance to the respondent. The grandfather clause only applies "if the retiring member has received severance pay at termination." Laws 1991, 313:7. The question is whether this language precludes application of the grandfather clause in the calculation of the petitioner's retirement benefits because her severance pay was accrued but not actually paid at termination. We hold that it does not, under the same analysis we have just applied in determining that the general provision of RSA 100-A:1, XVII does not require that severance pay actually be paid at termination. Therefore, on the facts of this case, the respondent, on remand, shall apply the grandfather clause to the petitioner when the respondent determines the extent to which the 150% earnings cap applies.

*Reversed and remanded.*

All concurred.