Manchester Retirement Board
No. 95-581

## APPEAL OF KEVIN G. BARRY

(Board of Trustees of the City of Manchester Employees'
Contributory Retirement System)

September 18, 1997

*McDowell & Mekeel, P.A.*, of Manchester (*Robert K. Mekeel* and *Mark D. Morrissette* on the brief, and *Mr. Mekeel* orally), for the petitioner.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Claudia C. Damon* on the brief and orally), for the respondent, Board of Trustees of the City of Manchester Employees' Contributory Retirement System.

THAYER, J. The petitioner, Kevin G. Barry, appeals an order of the Board of Trustees of the City of Manchester Employees' Contributory Retirement System (retirement board) pursuant to RSA chapter 541, *see* Laws 1973, 218:18, reducing his disability pension based upon income generated from his trucking, lawn care, and paving business (DEAK Trucking). We affirm in part, vacate in part, and remand.

The facts are undisputed. The petitioner was formerly employed by the City of Manchester (city) as a refuse collector. In 1991, the petitioner sustained work-related injuries to his shoulder and back. As a result, the petitioner was determined medically unfit for further employment with the city. The petitioner received a lump sum settlement of workers' compensation benefits. *See* RSA 281-A:37 (Supp. 1992) (amended 1993, 1994). The petitioner also received annual disability pension benefits from the city's retirement system. *See* Laws 1973, 218:8, I, II.

The retirement board determined that the petitioner's disability pension benefits for 1994 were $12,466.33. The retirement board

reduced the petitioner's benefits by $9,370.96 after receiving the petitioner's annual earnings information and income tax return. The reduction was based on income from DEAK Trucking.

DEAK Trucking was a sole proprietorship. The petitioner performed the work of the business himself. In 1994, the gross receipts of DEAK Trucking were $54,149. The cost of goods sold was $25,552. In calculating the reduction of the petitioner's disability benefits, the retirement board apparently subtracted the cost of goods sold from the gross receipts, resulting in a gross profit of $28,597. Using that figure, the retirement board calculated that the petitioner's benefits should be reduced by $9,370.96.

The petitioner disputed the reduction, arguing that the board should have subtracted from gross profits the cost of advertising; car and truck expenses; depreciation; legal and professional services; office expenses; rent or lease of vehicles, machinery, and equipment; repairs and maintenance; and supplies — all items that the petitioner listed as business expenses on Schedule C of his federal income tax statement. After a hearing, the board upheld the $9,370.96 reduction. The petitioner's motions for reconsideration and rehearing were denied. This appeal followed.

The city's retirement system provides, among other things, a retirement pension for city employees who become disabled. *See* Laws 1973, 218:8, II. The act, however, reduces a disabled retiree's pension benefits based on "pay" that a retiree receives if the retiree is engaged in "substantial gainful employment." *See* Laws 1973, 218:8, III. The act provides in pertinent part:

> If the retirement board finds that any disability retiree is engaged in any substantial gainful employment which is found by the board to be other than for the primary purpose of rehabilitation, his disability retirement shall be reduced if such gainful occupation pays more than the difference between his retirement allowance and his average final compensation . . . .

*Id.*

On appeal, the petitioner argues that the retirement board erred in reducing his disability benefits by the income generated from DEAK Trucking because: (1) the business was not "substantial gainful employment"; (2) the business was for "the primary purpose of rehabilitation"; and (3) the board unreasonably calculated "pay" that he received. We do not reach the petitioner's State and federal constitutional claims because we decide the case on nonconstitutional grounds. *See Appeal of Barry*, 141 N.H. 170, 174,

681 A.2d 75, 77 (1996); *see also State v. Hodgkiss*, 132 N.H. 376, 379, 565 A.2d 1059, 1061 (1989). An order of the retirement board shall not be set aside or vacated except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable. RSA 541:13 (1974); *see Barry*, 141 N.H. at 173, 681 A.2d at 77.

We first address the petitioner's argument that his business did not constitute "substantial gainful employment," a prerequisite to reducing disability benefits. *See* Laws 1973, 218:8, III. The petitioner contends that DEAK Trucking was a "new and speculative business venture" that provided only "nominal earnings." The retirement board defined "substantial gainful employment" according to its internal administrative regulations as work "that reasonably conforms with the individual's age, education, training, temperament and mental and physical capacity to adapt to other forms of labor than that to which the individual was accustomed." The retirement board found that the petitioner's employment satisfied this definition.

■ "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Welch v. Director, N.H. Div. of Motor Vehicles*, 140 N.H. 6, 8, 662 A.2d 292, 293 (1995) (quotation omitted). When construing a statute, "we ascribe the plain and ordinary meanings to the words used." *Milette v. N.H. Retirement System*, 141 N.H. 342, 345, 683 A.2d 531, 532-33 (1996) (quotation omitted). Though the statute does not define "substantial gainful employment," the retirement board's construction of the term comports with the plain meaning of the words. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (unabridged ed. 1961) (defining "substantial"). We cannot say the statute requires the employment to provide more than nominal earnings to be substantial and gainful; in any event, disability retirement benefits will be reduced only if "such gainful occupation pays more than the difference between [the petitioner's] retirement allowance and his average final compensation." Laws 1973, 218:8, III.

The petitioner next argues that the retirement board incorrectly defined his "pay" for purposes of the statute. Under the statute, if the petitioner's pay derived from gainful employment and his disability benefits exceed his previous compensation, the petitioner's benefits must be reduced based on a formula contained in the statute. *Id.* Accordingly, the retirement board must first compute the petitioner's "pay" from gainful employment to determine the

appropriate benefit reduction, if any. *See id.* Here, the retirement board equated "pay" with gross profit from the petitioner's business. "Gross profit" is "[t]he difference between sales and the cost of goods sold before allowance for operating expenses and income taxes." BLACK'S LAW DICTIONARY 703 (6th ed. 1990). We hold that the retirement board erred in equating "pay" with the gross profit of the petitioner's business.

■ "Pay" is not defined by the statute. As for its plain and ordinary meaning, "pay" is defined as "[c]ompensation; wages; salary; commissions; fees." *Id.* at 1128. Business expenses are not part of an individual's compensation, wages, salary, commissions, or fees. While the petitioner may expend significant amounts of money to pay business expenses, that money does not compensate the petitioner; it merely sustains a business that may or may not generate compensation for the petitioner. Simply put, the retirement board erred when it failed to subtract from the petitioner's "pay" valid business expenses.

Finally, the petitioner argues that the retirement board erred in reducing his disability benefits because his business was for "the primary purpose of rehabilitation." Laws 1973, 218:8, III. "Rehabilitation" is not defined by the statute, and the statute does not provide further guidance; accordingly, we look to the plain and ordinary meaning of the term. *See Milette,* 141 N.H. at 345, 683 A.2d at 532-33. "Rehabilitation" is ordinarily defined as "the physical restoration of a sick or disabled person by therapeutic measures . . . to participation in the activities of a normal life within the limits of his physical disability." WEBSTER'S, *supra* at 1914. While the petitioner's business may arguably have a therapeutic component, we cannot say that the retirement board was "unjust or unreasonable" in concluding that the primary purpose of the business was "to earn additional income."

The petitioner asserts that the statute provides an exemption for any pay he receives if the primary purpose of his employment was "to rehabilitate his earning capacity." As discussed above, we cannot say the retirement board erred in construing "rehabilitation" as referring to rehabilitation of the petitioner's medical condition. Indeed, if the statute was referring to rehabilitation of "earning capacity," then every form of employment likely would be exempt under the statute, thus rendering the statute meaningless. We will not interpret a statute in such a manner. *See Appeal of Soucy,* 139 N.H. 110, 116, 649 A.2d 60, 63 (1994). Accordingly, we affirm in part,

vacate in part, and remand for further proceedings consistent with this opinion.

*Affirmed in part; vacated in part; remanded.*

All concurred.