Hillsborough-southern judicial district
No. 96-628

PHEASANT LANE REALTY TRUST

v.

CITY OF NASHUA

November 9, 1998

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Dean Eggert* on the brief and orally), and *Goulston & Storrs, P.C.,* of Boston, Massachusetts (*Daniel C. Sacco* and *Lynne Alix Morrison* on the brief, and *Ms. Morrison* orally) for the plaintiff.

*Office of Corporation Counsel,* of Nashua (*James M. McNamee* and *Mary Anne Mueller* on the brief, and *Mr. McNamee* orally), for the defendant.

*Susan Slack*, of Concord, by brief for the New Hampshire Municipal Association, as *amicus curiae.*

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Margaret H. Nelson* on the brief), and *New England Legal Foundation*, of Boston, Massachusetts (*Cynthia L. Amara* and *Stephen O. Ostrach* on the brief), for New England Legal Foundation, as *amicus curiae.*

JOHNSON, J. The City of Nashua (city) appeals a decision of the Superior Court (*Dalianis*, J.) denying the city's motion to dismiss and granting Pheasant Lane Realty Trust's (Pheasant Lane) motion for summary judgment. We affirm.

The city assessed property owned by Pheasant Lane and known as the Pheasant Lane Mall (mall) on April 1, 1995. Based on city-generated estimates of lease income from mall tenants, the city assessed the value of the mall at $50,200,000. Applying the applicable tax rates, the total tax bill for 1995 was $1,483,410. Pheasant Lane made the first tax payment of $725,390 on May 30, 1995, and the second payment of $758,020 on November 29, 1995.

In October 1995, while researching title information on the mall, the city located a mortgage deed granted by Pheasant Lane which included a lease synopsis indicating that the mall received approximately twice as much lease income as previously estimated. Based on this information, the city on February 7, 1996, increased the mall's 1995 assessment to $94,500,000, effective April 1, 1995. The city issued a supplemental tax bill in the amount of $1,309,065 on February 14, 1996.

In response, Pheasant Lane sought a permanent injunction, a declaratory judgment, and a writ of mandamus to prevent the city from imposing either taxes or sanctions for nonpayment as a result of the new assessment. The trial court granted Pheasant Lane's motion for a permanent injunction. The trial court concluded that the city had no authority to issue a supplemental assessment on Pheasant Lane's property due to the city's prior erroneous assessment. The trial court noted that pursuant to RSA 76:14 (1991), property escapes taxation and therefore may be subject to supplemental assessment when it "has not been taxed at all, as opposed to property that has been taxed, but has allegedly been undervalued or underassessed."

On appeal, the city argues that Pheasant Lane failed to exhaust administrative remedies before obtaining judicial relief, and that the city could issue a supplemental tax bill under RSA 76:14.

"A party is not required to exhaust administrative remedies where the issue on appeal is a question of law rather than a question

of the exercise of administrative discretion." *Bedford Residents Group v. Town of Bedford*, 130 N.H. 632, 639, 547 A.2d 225, 230 (1988). The only substantive issue raised at the superior court and on appeal is the authority for the city's supplemental assessment for underassessed property under RSA 76:14. Interpretation of a statute is a question of law, *see Appeal of Kiwanis Club of Hudson*, 140 N.H. 92, 94, 663 A.2d 90, 91 (1995), and therefore, the trial court correctly denied the city's motion to dismiss for failure to exhaust administrative remedies.

"On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Farrow*, 140 N.H. 473, 474, 667 A.2d 1029, 1031 (1995) (quotation omitted). "[S]tatutory words and phrases are interpreted according to commonly approved usage unless from the statute it appears that a different meaning was intended." *Appeal of John Denman*, 120 N.H. 568, 572, 419 A.2d 1084, 1087 (1980); *see* RSA 21:2 (1988). RSA 76:14 provides:

> If the selectmen, before the expiration of the year for which a tax has been assessed, shall discover that the same has been taxed to a person not by law liable they may, upon abatement of such tax and upon notice to the person liable for such tax, impose the same upon the person so liable. And if it shall be found that any person or property shall have *escaped taxation* the selectmen, upon notice to the person, shall impose a tax upon the person or property so liable.

(Emphasis added.) "Escaped taxation" is not defined by the statute, and the statutory scheme provides no further guidance. Accordingly, we look to the plain and ordinary meaning of the term. *See Appeal of Barry*, 142 N.H. 284, 287, 700 A.2d 296, 297 (1997). "Escape" is ordinarily defined as "to break away from: get free from; to get or be out of the way of . . . miss or succeed in averting." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 774 (unabridged ed. 1961).

Based on the record before it, the trial court found that the city had taxed Pheasant Lane's mall. The city's tax bill referred to the mall's location and description; the only error was in appraising the value of the property.

Interpreting a prior codification of RSA 76:14 identical in language, we noted that "[t]hat statute was enacted to make provision for supplemental assessments in cases where the selectmen through inadvertence or mistake had omitted taxable property

from their invoice, or set it down to a person not liable to be taxed for it." *Jaffrey v. Smith*, 76 N.H. 168, 174-75, 80 A. 504, 507 (1911). RSA 76:14 may be used by municipalities only to correct errors arising under these two situations. As the trial court correctly noted:

> If the legislature had intended to include mistakenly underassessed property within the definition of property that has "escaped taxation," it could have expressly done so, . . . or it could have enacted a statute that explicitly authorized reassessment of underassessed property, mistakenly underassessed or otherwise.

Because the power to tax arises solely by statute, *see Olson v. Town of Fitzwilliam*, 142 N.H. 339, 342, 702 A.2d 318, 320 (1997); *Opinion of the Justices*, 76 N.H. 609, 612, 85 A. 757, 758 (1913), "the right to tax must be found within the letter of the law and is not to be extended by implication." *Grady v. Commissioner of Revenue*, 657 N.E.2d 751, 753 (Mass. 1995) (brackets and quotation omitted). As such, mistaken property tax valuations can be corrected only through legislatively authorized remedies. *See First Security Mortgage Co. v. Salt Lake County*, 866 P.2d 1250, 1252 (Utah Ct. App. 1993).

Our interpretation of the phrase "escape taxation" is consistent with the interpretation of other courts that have concluded that undervalued property, as calculated by the assessing authority, has not escaped taxation. *See, e.g., Anchorage Independent School District v. Stephens*, 370 P.2d 531, 533 (Alaska 1962); *Okeelanta Sugar Refinery, Inc. v. Maxwell*, 183 So. 2d 567, 568 (Fla. Dist. Ct. App. 1966); *German Sav. Bank v. Trowbridge*, 100 N.W. 333, 333-34 (Iowa 1904); *Grosvenor v. Supervisor of Assessments*, 315 A.2d 758, 764 (Md. Ct. App. 1974); *Bd. of Equalization v. Nupetco Assoc.*, 779 P.2d 1138, 1139-40 (Utah 1989).

In the trial court's view, it was "not clear from the face of the statute whether the legislature intended to include underassessed property in the classification of property that has 'escaped taxation.'" Even assuming that the statutory language was ambiguous, an "ambiguous tax statute will be construed against the taxing authority rather than the taxpayer." *Appeal of John Denman*, 120 N.H. at 571, 419 A.2d at 1087. Accordingly, even if we agreed that the statute was ambiguous, we would conclude that RSA 76:14 does

not include underassessed property within the scope of property which escapes taxation.

*Affirmed.*

All concurred.