NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2020-0358


MERRIMACK PREMIUM OUTLETS, LLC & a.

v.

TOWN OF MERRIMACK

Argued: July 7, 2021
Opinion Issued: October 1, 2021


Sassoon Cymrot Law, LLC, of Hingham, Massachusetts (Anthony M. Ambriano on the brief and orally), for the plaintiffs.


Drummond Woodsum & MacMahon, of Manchester (Matthew R. Serge and Demetrio F. Aspiras on the brief, and Demetrio F. Aspiras orally), for the defendant.


HICKS, J.  The plaintiffs, Merrimack Premium Outlets, LLC and Merrimack Premium Outlets Center, LLC, appeal, and the defendant, Town of Merrimack (Town), cross-appeals, orders of the Superior Court (Colburn, J.) in this action challenging the Town's reassessment of taxable property.  We reverse and remand.

The following facts were recited in the trial court's orders or relate the contents of documents contained in the record.  Merrimack Premium Outlets,

LLC owns a large property in Merrimack (the Property) that it leases to Merrimack Premium Outlets Center, LLC. The latter entity operates a retail outlet shopping mall, known as the Merrimack Premium Outlets, on the Property. In 2016, the Town conducted a revaluation of all taxable property within the municipality. See RSA 75:8-a (2012). As a result, the Property was assessed at $86,549,400. Later that year, the Town became aware that the Property had been used in or about 2013 as collateral for a loan and had been valued for that purpose at $220,000,000. Based on this information, the Town believed that it had severely undervalued the Property. Accordingly, the Town reassessed the Property for the 2017 tax year at $154,149,500 (the 2017 reassessment). The plaintiffs then brought this action for declaratory judgment and injunctive relief.

The plaintiffs' complaint alleges that there were no changes in either the Property or the market that justify the 2017 reassessment. It further alleges that: (1) the Property was not sold during that timeframe; (2) the reassessment did not correct any clerical or mathematical errors in the 2016 assessment; and (3) the increase in the assessment did not result from changes in assessment methodology applied to all Town properties. The complaint asserts that because "[t]he Town had no legal authority to make such a reassessment," it was "void and illegal." The complaint also alleges, "[o]n information and belief," that "the Town did not increase the tax year 2017 assessments of the other shopping center and retail outlets in the Town" and asserts that the "reassessment is an unauthorized, illegal and unconstitutional 'spot' assessment."

The parties requested that the court resolve certain legal issues on the pleadings to narrow the issues for trial. Accordingly, on June 14, 2019, the court issued an order addressing, among other issues, whether the Town had statutory authority to make the 2017 reassessment. The court ruled that "the Town had the legal authority to adjust the appraised value of the [Property] for the 2017 tax year despite the fact that there were no physical, zoning, or ownership change[s] to the [P]roperty following the 2016 town-wide revaluation." Based on that ruling, the court subsequently dismissed count II of the complaint for failure to state a claim, to the extent that it sought relief "on the basis that the Town lacked the authority to change the assessed value" of the Property.

The Town also initially sought to dismiss the plaintiffs' constitutional challenge for failure to state a claim, which the trial court denied. Thereafter, the trial court dismissed that claim with prejudice when it granted the Town's second motion for sanctions based upon the plaintiffs' repeated failure to answer certain interrogatories. It subsequently denied the plaintiffs' motion for reconsideration.

The plaintiffs now appeal, arguing, in pertinent part, that the trial court erred in: (1) ruling that the Town had statutory authority to make the 2017 reassessment when there had been no physical, zoning, or ownership changes to the Property; and (2) dismissing their constitutional claim with prejudice as a discovery sanction. The Town cross-appeals, arguing that the trial court erred in denying the Town's motion to dismiss the plaintiffs' unconstitutional spot assessment claim.

We begin with the plaintiffs' argument that the trial court erred in ruling that the Town had the authority to reassess the Property for the 2017 tax year in order to correct a prior undervaluation. "Because the power to tax arises solely by statute, the right to tax must be found within the letter of the law and is not to be extended by implication." Pheasant Lane Realty Trust v. City of Nashua, 143 N.H. 140, 143 (1998) (quotation and citations omitted). "As such, mistaken property tax valuations can be corrected only through legislatively authorized remedies." Id. Accordingly, "[r]esolving this issue requires us to engage in statutory interpretation, and, therefore, our review is de novo." Virgin v. Fireworks of Tilton, 172 N.H. 484, 486 (2019) (quotation omitted).

When interpreting statutes, "[w]e first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. at 486. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. at 486-87 (citation omitted).

We described New Hampshire's statutory property tax scheme in LLK Trust v. Town of Wolfeboro, 159 N.H. 734 (2010). Specifically, "a tax year runs from April 1 to March 31" and "[t]axes are assessed based upon the value of property located in a town as of April 1." LLK Trust, 159 N.H. at 736; see RSA 76:2 (Supp. 2020); RSA 74:1 (2012). "The Town must adjust assessments annually so that all assessments are reasonably proportional within that municipality." LLK Trust, 159 N.H. at 736 (quotation omitted); see RSA 75:8, I (2012). In addition, at least every five years, "[t]he assessors and/or selectmen shall reappraise all real estate within the municipality so that the assessments are at full and true value." RSA 75:8-a; cf. LLK Trust, 159 N.H. at 736 (discussing prior version of statute).

The plaintiffs argue that "[o]nce proportionality is achieved by the '5-year' town-wide reappraisal, that proportionality can only be modified when there has been a change in a property within the express terms of RSA 75:8." They contend that no such change occurred here.

RSA 75:8 provides:

I. Annually, and in accordance with state assessing guidelines, the assessors and selectmen shall adjust assessments to reflect changes so that all assessments are reasonably proportional within that municipality. All adjusted assessments shall be included in the inventory of that municipality and shall be sworn to in accordance with RSA 75:7.

II. Assessors and selectmen shall consider adjusting assessments for any properties that:

(a) They know or believe have had a material physical change;
(b) Changed in ownership;
(c) Have undergone zoning changes;
(d) Have undergone changes to exemptions, credits or abatements;
(e) Have undergone subdivision, boundary line adjustments, or mergers; or
(f) Have undergone other changes affecting value.

RSA 75:8 (2012).

The Town argues that the plaintiffs urge a "restrictive reading" of RSA 75:8 under which "no change in assessment may occur unless it satisfies one of the conditions listed in RSA 75:8, II." That reading is erroneous, the Town contends, because "[t]he plain language of RSA 75:8, II contains no limitation on why the Selectmen may consider adjusting an assessment." According to the Town, the statute is not mandatory, but "merely directs the municipality to 'consider' adjusting assessments if one of the enumerated conditions is present. It neither mandates such an adjustment, nor does it preclude an adjustment under other conditions."

The Town misconstrues the plaintiffs' argument. The plaintiffs do not rely on paragraph II of the statute, and the changes explicitly listed therein; rather, they rely on paragraph I, which directs assessors and selectmen to annually "adjust assessments to reflect <u>changes</u>." RSA 75:8, I (emphasis added). Based on that plain language, we agree with the plaintiffs that some "change" is a prerequisite to a municipality's legal authority to adjust a property's assessment under RSA 75:8, I.

The Town nevertheless contends that even if there is a "change" requirement in RSA 75:8, I, "[n]othing limits such 'changes' to physical manifestations." It argues that "the discovery of the extreme underassessment of the Property here satisfies any 'change' requirement in the statute." We disagree.

4

To discern the meaning of "changes" in RSA 75:8, I, we first look to paragraph II of that statute, which lists a number of events that might prompt assessors and selectmen to adjust a property's assessment. As evidenced by the final, catchall phrase, the listed events are all changes that may "affect[] value." RSA 75:8, II(f). Also informing our interpretation is recognition that "[t]axes are assessed based upon the value of property." LLK Trust, 159 N.H. at 736. RSA 75:1 requires the selectmen to appraise all taxable property, other than certain types of property specifically excepted, "at its market value[,] . . . mean[ing] the property's full and true value as the same would be appraised in payment of a just debt due from a solvent debtor." RSA 75:1 (Supp. 2020). Reading RSA 75:8 as a whole and in conjunction with RSA 75:1, we conclude that adjustment to an assessment pursuant to RSA 75:8, I, requires an actual change in the property's market value.

The Town contends that the catchall provision in RSA 75:8, II(f) is satisfied here, relying also on the portion of RSA 75:1 that provides: "The selectmen shall receive and consider all evidence that may be submitted to them relative to the value of property, the value of which cannot be determined by personal examination." RSA 75:1. The Town reasons that when "the Assessor became aware of new information bearing directly on the Property's value," that discovery constituted "an actionable change 'affecting value'" for purposes of RSA 75:8, II(f). Again, we disagree. Acquisition of information bearing on a property's value is not a change in value itself; it is merely a change in what the acquirer knows about the property's value. In other words, assuming, under the facts of this case, that the adjusted assessment of $154,149,500 is the correct value for the Property in 2017, it is also the correct value for the Property in 2016 — the Property's value did not change; rather, as the Town itself acknowledges, it "severely undervalued the [P]roperty in 2016."

The Town next argues that when interpreting RSA 75:8, we must consider RSA 75:7, which provides:

> The selectmen and assessors shall take and subscribe upon the copies or original inventories and assessments of both resident and nonresident taxes, furnished by them to the town clerks in their respective towns, to be recorded in the clerk's records, the following oath, which may be subscribed before any justice of the peace or notary public: We, the selectmen and assessors of _____, certify under the penalty of perjury that in making the inventory for the purpose of assessing the foregoing taxes all taxable property was appraised to the best of our knowledge and belief at its full value, in accordance with state appraisal standards.

RSA 75:7 (2012). The Town argues that "[t]o accept the [plaintiffs'] reading of RSA 75:8, II would significantly curtail an official's ability to faithfully carry out the oath taken in RSA 75:7."

"When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes." In re A.D., 172 N.H. 438, 441 (2019). The Town, however, seeks to do more than read RSA 75:7 and RSA 75:8 harmoniously; it seeks to read into RSA 75:8 the ability to correct an undervaluation. The trial court similarly construed RSA 75:8, relying on our decision in Tennessee Gas Pipeline Co. v. Town of Hudson, 145 N.H. 598 (2000), to conclude that the "annual adjustments to assessed values may be made for any number of reasons, including if a property is mistakenly undervalued in a prior tax year."

Tennessee Gas Pipeline, however, was decided under a prior version of RSA 75:8, which provided that "'assessors and selectmen shall, in the month of April in each year, . . . correct all errors that they find in the then existing appraisal.'" Tennessee Gas Pipeline, 145 N.H. at 605 (quoting RSA 75:8 (1991)). Following its repeal and reenactment in 2001, see Laws 2001, 158:53, RSA 75:8 no longer contains the language mandating the correction of errors, and we will not, under the guise of statutory interpretation, reinsert that language into the statute. See Virgin, 172 N.H. at 486 ("We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include."). Moreover, we will not extend by implication the authority to correct erroneous property tax valuations. Pheasant Lane Realty Trust, 143 N.H. at 143.

To the extent that RSA 75:7 may seem to conflict with RSA 75:8, we note that the former statute must be read in the context of the overall statutory scheme, which sets forth a system of municipality-wide reappraisals at least every five years and a limited authority to adjust assessments annually to reflect changes in value. See RSA 75:8, :8-a; N. New England Tel. Operations v. Town of Acworth, 173 N.H. 660, 667 (2020) (noting that "we interpret statutes in the context of the overall statutory scheme and not in isolation"). That statutory scheme, in its current form, does not allow for correction of even known errors in valuation prior to the next municipality-wide reappraisal. Compare RSA 75:8 (2012), with RSA 75:8 (1991). Accordingly, we conclude that the oath in RSA 75:7 that "all taxable property was appraised to the best of our knowledge and belief at its full value" must be read as certifying the accuracy of the last legally-authorized appraisal or adjustment at the time it was made. RSA 75:7 (emphasis added).

For similar reasons, we reject the Town's arguments that the 2017 reassessment was necessary to ensure the proportionality required under RSA

75:8, I, and the New Hampshire Constitution, see N.H. CONST. pt. II, art. 5, and that interpreting RSA 75:8 as failing to authorize reassessment under these circumstances "would lead to absurd results" because "a property owner [would be] permitted to benefit from an under-assessment unless or until a general reassessment occurs." We acknowledge that RSA 75:8, I, mandates annual assessment adjustments "so that all assessments are reasonably proportional within that municipality." RSA 75:8, I. However, under the statute's plain language, such an annual adjustment shall occur "to reflect changes." Id. The construction urged by the Town would read that phrase out of the statute. See Appeal of Town of Lincoln, 172 N.H. 244, 248 (2019) ("The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." (quotation omitted)). The current statutory scheme seeks to ensure proportionality through municipality-wide reappraisals at least every five years and annual adjustments to the assessments of properties that have changed in value. The scheme may not be perfect; indeed, "the demand of constitutional equality in taxation anticipates some practical inequalities" and "[a]bsolute mathematical equality is not obtainable in all respects if taxation is to be administered in a practical way." Sirrell v. State, 146 N.H. 364, 370 (2001) (quotations and brackets omitted). The Town does not raise a developed claim that the statutory scheme, as we interpret it, violates Part II, Article 5 of the New Hampshire Constitution, and it has not persuaded us that it leads to absurd results.

For the foregoing reasons, we conclude that the trial court erred in ruling that the Town had the authority to correct its undervaluation of the Property by adjusting its assessment pursuant to RSA 75:8. Accordingly, we reverse and remand. Given this disposition, we need not address the remaining arguments of the parties.

Reversed and remanded.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.

7