Department of Safety
No. 2003-589

# APPEAL OF NEW HAMPSHIRE FIREWORKS, INC.
## (New Hampshire Department of Safety)

Argued: June 10, 2004
Opinion Issued: August 30, 2004

*Hall, Morse, Anderson, Miller & Spinella, P.C.*, of Concord (*Frank P. Spinella, Jr.* on the brief and orally), for the plaintiff.

*Peter W. Heed*, attorney general (*Andrew B. Livernois*, assistant attorney general, on the brief and orally), for the State.

GALWAY, J. The plaintiff, New Hampshire Fireworks, Inc., appeals the decision of an administrative hearings examiner upholding the suspension of its license to sell fireworks by the commissioner of the department of safety (department) pursuant to RSA 160-B:6 (2002). The plaintiff raises numerous issues on appeal including whether: (1) the notice of suspension and hearing gave the plaintiff sufficient notice of the charges against it; (2) the State met its burden of proof; (3) the statute at issue unduly burdens interstate commerce; (4) the activities of law enforcement constituted entrapment; (5) the State proved the requisite mental state; (6) RSA 160-B:16-a requires a minimum purchase of $1,000 for the sale of reloadable aerial shells; (7) the suspension period was authorized by the statute; and (8) the suspension violates the New Hampshire Constitution. We affirm.

On June 18, 2003, the plaintiff was issued a license to sell display and consumer fireworks under RSA chapter 160-B (2002). To sell fireworks under that chapter, the seller must hold a federal fireworks permit, a state license, and a local permit. *See* RSA 160-B:2, I (a)-(c). The holder of a license under RSA chapter 160-B is permitted to sell fireworks in three limited circumstances: (1) if the purchaser presents a certificate of competency issued by the department authorizing it to display fireworks and leaves a copy of that certificate with the seller; (2) if the purchaser presents a license for the storage of class B fireworks issued by the department; or (3) if the sale is a wholesale transaction made to a person engaged in the business of selling fireworks. *See* RSA 160-B:2, II (a)-(c).

"Wholesale" is defined within RSA chapter 160-B as a sale for a minimum of $1,000 made to a person engaged in the business of making sales of fireworks. RSA 160-B:1, VIII. Three additional limitations are statutorily imposed on wholesale sales. First, wholesale sales may not be made to a person or corporation that resides in New Hampshire unless that person or corporation is itself licensed to sell fireworks under RSA chapter 160-B. RSA 160-B:6, VII. Second, wholesale sales of fireworks

must be shipped by common carrier or by the wholesaler making the sale. *Id.* Third, sellers of wholesale fireworks must record the purchaser's retail number from its state of residence or IRS tax identification number. RSA 160-B:6, VI.

On June 24, 2003, the New Hampshire State Police sent three undercover police officers into the plaintiff's store in Hooksett to attempt to make retail purchases of non-permissible fireworks—fireworks that may not be sold at retail. Troopers Grealy and MacKenzie went into the store and asked about purchasing fireworks. The store clerk asked if they were from out of state, and Trooper MacKenzie said she was from New York. When asked to produce a driver's license, she provided an expired New York driver's license which the clerk photocopied. Trooper MacKenzie then purchased $140 worth of fireworks, including several types of non-permissible fireworks such as reloadable aerial shells, "God of Thunder" fireworks, and firecrackers. She paid in cash and left the store with the fireworks.

Later that day, Trooper Huse went into the plaintiff's store to purchase fireworks. When asked by the clerk for an out-of-state license, he provided a Massachusetts license with a photograph that "did not even remotely resemble" him. Despite the fact that the store clerk questioned whether the photograph on the license was that of Huse, the sale went through. The trooper purchased $100 worth of non-permissible fireworks, including a smoke chimney, a strobe pot, tornado firecrackers, rocket parachutes, tulip rockets, a "Black Cat" muzzle loader aerial shell, an artillery shell and a reloadable aerial shell. He paid for the fireworks in cash and left the store with them.

Trooper MacKenzie returned to the plaintiff's store and purchased an additional $150 worth of non-permissible fireworks, including a "Heavy Artillery" reloadable aerial shell, "Super Charge Flashing Thunder" firecrackers, bottle rockets, and "Atlas Four" rockets.

The next day, Sergeant Poirier, the State police officer responsible for issuing fireworks licenses and enforcing the laws regarding the possession and sale of fireworks in New Hampshire, briefed the commissioner of the department about the events involving the plaintiff. The commissioner immediately suspended the plaintiff's license. That same day, the plaintiff was served copies of the suspension notice and a copy of the notice of hearing.

Following a hearing regarding the suspension of the plaintiff's license held on July 2 and 3, 2003, the hearings examiner upheld the suspension. A separate hearing was held on August 4, 2003, to determine the appropriate penalty. Following that hearing, the examiner imposed a two-year suspension of the plaintiff's license.

*I. Standard of Review*

█ In an appeal from an administrative agency pursuant to RSA 541:6, the burden of proof is on the plaintiff to show that the hearings examiner's decision was clearly unreasonable or unlawful. RSA 541:13 (1997). The hearings officer's findings of fact are deemed "lawful and reasonable." *Appeal of Town of Litchfield*, 147 N.H. 415, 416 (2002) (quotation omitted). The decision may be reversed only if the hearings officer committed an error of law or if "the order is unjust or unreasonable." *Appeal of Young*, 146 N.H. 216, 217 (2001).

*II. Notice*

The plaintiff argues that the suspension notice and hearing notice did not sufficiently identify all of the statutes which it was charged with having violated, thereby infringing upon its right to procedural due process guaranteed by Part I, Article 15 of the New Hampshire Constitution.

The notice of immediate suspension served on the plaintiff on June 25, 2003, stated:

> This action is being taken because on June 24, 2003, Non-permissible Fireworks, Reloadable Aerial Shells and Smoke Bombs were sold in violation of RSA 160-B:2, RSA 160-B:16-a and RSA 644:16-b at the facility [in Hooksett]. The sale of the non-permissible fireworks presents a clear violation of the state law and presents an imminent threat to public health, safety and welfare.

The notice of hearing ordered the plaintiff "to appear . . . to determine whether [its] privilege to apply for or maintain, [its] Fireworks Sales License shall be suspended/revoked, based upon a complaint received from the Division of State Police." The hearing was scheduled for July 2, 2003.

"Where governmental action would affect a legally protected interest, the due process clause of the New Hampshire Constitution guarantees to the holder of the interest the right to be heard at a meaningful time and in a meaningful manner." *Appeal of Concord Steam Corp.*, 130 N.H. 422, 427 (1988) (citation omitted). "A fundamental requirement of the constitutional right to be heard is notice of the impending action that affords the party an opportunity to protect the interest through the presentation of objections and evidence." *Id.* at 427-28.

█ The plaintiff was provided with a summary of the complaint against it and the statutes it was alleged to have violated. The plaintiff was also provided, prior to the hearing, with copies of the police reports that

contained extensive factual details about the underlying complaint. This information was sufficient to inform the plaintiff of the charges against it in order to prepare a defense. In addition, seven days after the suspension a two-day hearing was held during which the plaintiff presented witnesses on its behalf, introduced documentary evidence, and cross-examined the State's witnesses. Accordingly, we conclude that the plaintiff's right to due process was more than adequately protected.

*III. Threat to Public Health, Safety and Welfare*

The plaintiff argues that the State presented insufficient evidence to establish that any alleged violation presented an imminent threat to public health, safety or welfare. It further argues that the hearings officer erred in concluding that any violation of RSA chapter 160-B constitutes such a threat.

RSA 160-B:14 provides that the commissioner "may immediately suspend a license issued pursuant to RSA 160-B:6 if the commissioner has evidence that the licensee is selling fireworks contrary to any of the provisions of RSA 160-B or any rules adopted under this chapter." If a license is suspended, an opportunity for a hearing must be provided within ten days of the suspension. RSA 160-B:14. Under rules promulgated by the department, "[a]fter receipt of a complaint and investigation indicates that a licensee has or might be jeopardizing public health, safety, or welfare" by violating RSA chapter 160-B, "the commissioner shall immediately suspend the license to market or sell display and consumer fireworks." N.H. ADMIN. RULES, Saf-C 2607.07(a); *see* N.H. ADMIN. RULES, Saf-C 2607.04(e).

■ The commissioner concluded, based upon the information presented to him by Sergeant Poirier on June 25, 2003, that the plaintiff's conduct constituted "an imminent threat to public health, safety and welfare," thereby mandating an immediate *ex parte* suspension of the plaintiff's license. The plaintiff took no steps to challenge this suspension. Therefore, when the hearing on the merits was held seven days later, the commissioner's original determination that the plaintiff's actions mandated an immediate suspension was moot. The only issue before the hearings examiner was whether the suspension should continue. Under the existing statutory and regulatory scheme, we hold that the hearings examiner was not required to find evidence of a threat to public health, safety or welfare in order to sustain the suspension.

*IV. Commerce Clause*

The plaintiff argues that RSA 160-B:6, VII applies only to sales to New Hampshire residents and that its application to out-of-state sales unduly burdens interstate commerce in violation of the Commerce Clause of the United States Constitution. U.S. CONST. art. I, § 8, cl. 3. RSA 160-B:6, VII provides that "[a] wholesale sale shall not be made to a person or corporation which resides in New Hampshire other than to a person or corporation licensed to sell fireworks.... Any wholesale sale shall be shipped by common carrier or by the wholesaler making the sale."

█ The statute, on its face, does not discriminate against out-of-state purchasers. The statute neither "directly regulates or discriminates against interstate commerce" nor does it "favor in-state economic interests over out-of-state interests." *Brown-Forman Distillers v. N.Y. Liquor Auth.*, 476 U.S. 573, 579 (1986). Furthermore, no interstate transaction occurred. In each of the three sales in this case, the police officers were physically present in the plaintiff's store, paid cash for the items and left the store with the merchandise. Simply because the seller may have believed it was selling to an out-of-state purchaser does not implicate the constitutional prohibition against "unjustifiably discriminating against or burdening the interstate flow of articles of commerce." *Smith v. N.H. Dep't of Revenue Admin.*, 148 N.H. 536, 538 (2002). We hold that no commerce clause violation occurred in this case.

*V. Entrapment*

The plaintiff argues that it was misled into selling fireworks to the undercover troopers "by their display of phony licenses and fraudulent execution of a certificate verifying out-of-state residence," and that these actions constituted entrapment. The State argues that entrapment is a defense available only in the context of criminal prosecutions. Even assuming the defense of entrapment was available to the plaintiff, we hold that the hearings examiner did not err in concluding that "[t]here was no entrapment because the [plaintiff] was eager to make a sale and ignored applicable statutes in order to do so."

█ Specifically, the hearings examiner found that the plaintiff was targeted by the police because they had received complaints about illegal sales in the past and that the police did nothing to entice the plaintiff to violate the statute but simply provided it with the opportunity to do so. As the hearings officer stated:

> There is nothing in any of [the] evidence which would indicate that the state used methods which went beyond "merely

affording a person an opportunity to commit an offense." The state's representatives presented identification which, in one case, contained a picture which did not resemble the purchaser and, in the other case, which had expired. The [plaintiff] took copies of the identification and actually questioned the identification of the male trooper. Still, they did nothing to stop the sale. It was not a question of simply targeting one clerk who simply made a mistake. More than one person was involved with the transactions. The [plaintiff] had every opportunity to avoid problems and failed to take into consideration any of the warning signs that should have brought the sale to a halt. This does not even take into account the issue of the statutory requirement to obtain more from an out of state wholesale purchaser than simply an out of state identification.

### VI. Mental State

The plaintiff argues that the State failed to prove that it knowingly committed a violation of RSA chapter 160-B. The plaintiff suggests that there was insufficient evidence in the record to demonstrate that it "knowingly sold to New Hampshire residents or knowingly sold at retail." The State argues that RSA 160-B:2 and RSA 160-B:16-a should be construed as creating strict liability offenses, thereby negating any requirement to prove the plaintiff's mental state.

■ Regardless of whether the statutes at issue should be construed as strict liability offenses, there is ample evidence in the record to support that the plaintiff knew it was engaged in retail activities. Under the statute, a wholesale sale is one for more than $1,000, made to a person who is in the business of selling fireworks, in which the fireworks are shipped by common carrier or the seller. RSA 160-B:1, VIII; RSA 160-B:6, VII. In this case, sales of $100 to $150 were made to individuals who offered no proof that they were engaged in the business of selling fireworks and who left the store carrying their purchases. This evidence amply supports that the plaintiff knew that none of the requirements for making wholesale sales were being met, in direct violation of RSA chapter 160-B.

### VII. Suspension Period

The plaintiff argues that the commissioner of the department has no authority under RSA 160-B:14 or any other provision to suspend a license beyond its expiration date, nor beyond the one-year life of a license. The plaintiff also argues that its two-year suspension from selling fireworks

violates Part I, Article 18 of the New Hampshire Constitution or is otherwise arbitrary and unreasonable.

RSA 160-B:14 gives the commissioner the authority to suspend a fireworks license if the licensee is found to have violated any of the relevant statutes or regulations relating to fireworks sales. "[T]he legislature may delegate to administrative agencies the authority to promulgate rules necessary to implement a statute." *Suburban Realty, Inc. v. Albin*, 131 N.H. 689, 691-92 (1989). In accordance with RSA 160-B:8, I, the commissioner promulgated rules setting the maximum length of time a fireworks license can be suspended at five years. *See* N.H. ADMIN. RULES, Saf-C 2607.05(b). The plaintiff sets forth no valid grounds for holding that the suspension may not exceed a license's expiration date. As the hearings examiner stated:

> The legislature left it up to the commissioner to set "the procedure and reasons for suspending or revoking a license issued pursuant to RSA 160-B:6." The reasons for suspension are set forth in Saf-C 2607.04. Saf-C 2607.05 sets forth the maximum length of suspension, specifically, 5 years. The hearings examiner finds no ambiguities in this scheme and accepts the authority to suspend up to 5 years on the basis of the violations found at the [hearing on the merits].

Furthermore, the two-year suspension imposed upon the plaintiff was not arbitrary or unreasonable, nor was it unconstitutional. The regulations promulgated by the department set forth a number of aggravating factors which must be taken into account in determining the length of the suspension. *See* N.H. ADMIN. RULES, Saf-C 2607.05(c)-(d). Aggravating factors include previous license suspensions; previous non-compliance with any fireworks laws, rules or regulations; actions of the licensee which it knew or should have known were contrary to any fireworks laws, rules or regulations; and actions by the licensee which create a hazard to public safety. N.H. ADMIN. RULES, Saf-C 2607.05(d)(1)-(4).

█ The hearings examiner received evidence that the plaintiff had previously been found guilty of selling permissible fireworks without a license and was therefore barred from holding a license to sell fireworks at the retail level. Despite being prohibited from selling retail fireworks, the plaintiff made repeated retail sales within eight days of being issued a wholesale sale license. As the hearings examiner concluded:

> [T]he main aggravating factor demonstrated by the state is the June 6, 2003 conviction for illegal sale of fireworks by the [plaintiff]. The seriousness of the violation is enhanced by the fact

that it occurred ... within a week after the issuance of the license. ...The license was limited to 160-B due to the prior misconduct of the [plaintiff].

In light of the facts before the hearings examiner, there was nothing unlawful about the imposition of a two-year suspension.

We find the remaining arguments raised by the plaintiff to be without merit and warrant no further discussion. *Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.