Rockingham
No. 2006-366

## CHARLES HUDSON

v.

## DIRECTOR, NEW HAMPSHIRE DIVISION OF MOTOR VEHICLES

Argued: February 21, 2007
Opinion Issued: April 12, 2007

*Law Offices of Richard N. Foley,* of Portsmouth (*Richard N. Foley* on the brief and orally), for the plaintiff.

*Kelly A. Ayotte,* attorney general, of Concord (*Nancy J. Smith,* senior assistant attorney general, on the brief and orally), for the defendant.

GALWAY, J. The plaintiff, Charles Hudson, appeals the denial by the Superior Court (*McHugh,* J.) of his petition to review a decision of the hearings examiner that upheld the suspension of his driver's license by the defendant, the director of the division of motor vehicles. We affirm.

The following facts were found by the hearings examiner or appear in the record. Hudson was involved in a single-person accident while driving a motorcycle in Portsmouth on August 17, 2005. Officer Michael Maloney of the Portsmouth Police Department arrived at the scene and questioned

Hudson. He observed that Hudson smelled of alcohol and his eyes were bloodshot and glassy. Maloney administered a horizontal gaze nystagmus test, which Hudson failed. He also took a preliminary breath test (PBT), which revealed a blood alcohol content (BAC) of 0.168.

Maloney arrested Hudson for driving while intoxicated, and he was transported to Portsmouth Regional Hospital for medical treatment. At the hospital, Maloney presented him with an administrative license suspension (ALS) form, which he read and signed. He then consented to a blood test, which, upon laboratory testing, revealed a BAC of 0.17.

The Portsmouth Police Department referred the ALS form, arrest report and laboratory results to the New Hampshire Department of Safety for ALS purposes. The department suspended Hudson's license. Hudson requested administrative review of the record by a hearings examiner, alleging failure to comply with the applicable regulations due to mistakes in the transmittal slip that accompanied his blood test to the laboratory. The hearings examiner upheld the order of suspension, finding that Hudson submitted to a properly administered alcohol concentration test that disclosed an alcohol concentration of 0.08 or more and was therefore subject to a suspension of his operating privileges under RSA 265:91-a, II(b) (2004) (repealed and replaced by RSA 265-A:30). Hudson appealed the hearings examiner's decision to the superior court, which denied the petition, finding that any violations in the taking of the blood were *de minimis*.

On appeal, Hudson argues that the court erred in finding that the violations were *de minimis*. Specifically, he argues that the blood test results should have been excluded because there was no indication of the type of non-alcoholic cleanser used and because the transmittal slip: (1) states the wrong date and time the blood was drawn; (2) does not provide the name and title of the person withdrawing the blood; and (3) does not list the type of non-alcoholic cleanser used to prepare the skin.

■ In an appeal to the superior court from an ALS hearing, the plaintiff bears the burden to show that the order upholding the suspension was clearly unreasonable or unlawful, and all findings of fact on questions properly before the hearings officer are deemed to be *prima facie* lawful and reasonable. RSA 263:75 (2004); *Saviano v. Director, N.H. Div. of Motor Vehicles*, 151 N.H. 315, 318 (2004). Resolution of this appeal requires statutory interpretation, which is a question of law that we review *de novo. Debonis v. Warden, N.H. State Prison*, 153 N.H. 603, 605 (2006). In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. *State v. Gubitosi*, 152 N.H. 673, 682 (2005). We first examine the

language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.*

The parties do not dispute that the State's form did not comply with the methods prescribed by the commissioner of the department of safety in New Hampshire Administrative Rules, He-P 2202.03(b), (f)(1), (4) and (5) (current version at N.H. ADMIN. RULES, Saf-C 6402.02), which required in pertinent part:

> (b) A cleanser shall be used to clean the area of skin where the blood specimen will be drawn. The cleanser shall contain no ingredients that would interfere with an analysis for alcohol or drugs.
>
> . . . .
>
> (e) The person who collects the blood specimen pursuant to RSA 265:85, I, 270:52, I or 215-A:11-d, I shall complete a blood specimen collection form.
>
> (f) The completed blood specimen collection form shall include:
>
>> (1) The name and title of the person withdrawing the specimen . . . .
>>
>> . . . .
>>
>> (4) The date and time the specimen was drawn in accordance with He-P 2202.03;
>>
>> (5) The type of non-alcoholic cleanser used to prepare the site . . . .

Thus, the issue before us is whether the hearings examiner should have excluded the blood test as evidence when the transmittal slip failed to comply with the methods prescribed by the commissioner. Under RSA 265:85, IV (2004): "No tests of blood, urine or breath authorized by RSA 265:84 shall be considered as evidence in any proceeding before any administrative officer or court unless such test is performed in accordance with methods prescribed by the commissioner of the department of safety."

For almost thirty years we have construed the exclusionary language in RSA 265:85, IV and its predecessors as relating solely to the standards for testing the blood, and not to the methods by which it was obtained. *State v. Groulx*, 109 N.H. 281, 282 (1969) (construing predecessor of RSA 265:85). In the past, we have not excluded the results of blood tests where the sample was improperly sealed, *State v. Paul*, 116 N.H. 252, 253-54 (1976),

there was a twelve-day delay between obtaining and testing the sample, *State v. Varney*, 117 N.H. 163, 164 (1977), or the sample was taken by a person not specifically permitted to do so by the statute, *Groulx*, 109 N.H. at 281-83, because, although these methods may have been required by regulation or statute, the violations did not relate to the standard for testing the blood.

■ In *State v. LaFountain*, 108 N.H. 219, 222 (1967), Justice Grimes dissented, stating that the method of securing the blood sample is an important part of the test because it relates to the test's reliability. Despite his dissent, the court has consistently construed the exclusionary language such that the method and timing by which the blood is obtained are not part of the standards for conducting the chemical test. *Varney*, 117 N.H. at 164. Thus, violations of regulations governing the methods used in obtaining the blood do not require exclusion of the test results under RSA 265:85, IV; such violations may affect the weight given to the test, but not its admissibility under the statute. *Paul*, 116 N.H. at 254 (citing *LaFountain*, 108 N.H. at 231).

■ Here, there is no evidence in the record that the violations affected the reliability of the blood test itself and no argument presented that the blood test itself was not performed in accordance with the regulations governing the standards for testing blood. Therefore, the admission of the blood test by the hearings examiner was not error. The superior court ruled that any violations in the taking of the blood were *de minimis*. Particularly in light of such corroborating evidence as Hudson's PBT result, the superior court could properly assign little weight to the violations in considering the blood test results. Finding no error, we affirm.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.