Original
No. 2007-779

PETITION OF FARMINGTON TEACHERS ASSOCIATION, NEA-NEW HAMPSHIRE
(New Hampshire Retirement System)

Argued: January 14, 2009
Opinion Issued: April 3, 2009

*James F. Allmendinger,* of Concord, staff attorney, by brief and orally, for the petitioner, NEA-New Hampshire.

*Foley Law Office,* of Concord (*Peter T. Foley* on the brief and orally), for the respondent.

*Kelly A. Ayotte,* attorney general (*Richard W. Head,* associate attorney general, on the brief), for the State, as *amicus curiae.*

BRODERICK, C.J. In this petition for a writ of certiorari, the Farmington Teachers Association, NEA-New Hampshire (petitioner), seeks review of a ruling of the Board of Trustees (board) of the respondent New Hampshire Retirement System (NHRS) that certain payments made to eight retired public school teachers by the Farmington School District (school district) were not "earnable compensation" for purposes of calculating retirement benefits. We affirm.

I

The facts are not in dispute. Between 1996 and 2005, the petitioner, which represents the eight teachers, entered into a series of collective bargaining agreements with the school district. Each of these agreements contained Article IX, Section 9.9 (section 9.9) that provided:

> A professional who has reached the age of 55 may, upon notification to the business office by August 15 for the next school year, elect to have his/her fringe benefits counted as if they were salary. The member is responsible for reimbursing the district for the district's share of the increased social security tax, state retirement, and the like, on these additional monies. The member must retain membership in the health care plan and the dental plan for the school year.

In the 2002-2005 agreement the age was lowered to fifty.

All eight teachers filed an election with the school district under this provision and the amount of each teacher's employer-provided health insurance premium was added to each teacher's paycheck. The teachers paid federal income tax on the additional money. Either bi-weekly or in a lump sum at the end of the year, each teacher paid back to the school district the cost of the health insurance premium, both the employer and employee share of FICA and Medicaid taxes, and the employer and employee contributions to the NHRS attributable to the medical premium amount.

The NHRS became aware of section 9.9 in October 2003 when a former school district employee sent a copy to the NHRS and inquired about its

legality. After investigation, the NHRS concluded that section 9.9 did not comply with RSA chapter 100-A (2001 & Supp. 2008). The NHRS subsequently provided the eight teachers with a "Notice of Earnable Compensation, Contribution and Pension Adjustment," advising them that the payments at issue did not qualify as "earnable compensation" and that adjustments had been made to their NHRS records. *See* N.H. ADMIN. RULES, Ret 304.

The petitioner appealed this decision to the board and a three-day administrative hearing was held before a hearings examiner. The hearings examiner recommended that the board "uphold the NHRS administrative staff's decision that certain payments to teachers in Farmington that were treated 'as if they were salary' are not earnable compensation and direct the staff to seek recoupment of the amounts overpaid to the members." The board approved the hearings examiner's recommendations, but waived recoupment of the retirement allowance payments made to four of the teachers who had already retired. This petition for a writ of certiorari followed.

The petitioner raises three issues: (1) whether the NHRS was unreasonable in concluding that the negotiated agreement to have health insurance benefits counted "as if they were salary" does not fall under the statutory definition of "earnable compensation" pursuant to RSA 100-A:1, XVII; (2) whether it was an unsustainable exercise of discretion for the NHRS not to promulgate an amended rule to clarify the requirements under the definition of earnable compensation and then apply the amended rule prospectively; and (3) whether the NHRS was unjust and unreasonable in denying any further relief to the petitioners.

"Our standard of review is whether the board acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Bailey*, 146 N.H. 197, 198 (2001) (quotation omitted).

## II

Under the NHRS, one of the benefits each eligible retiree receives is a fixed annual "retirement allowance." RSA 100-A:5. The dollar amount of a retired member's service retirement allowance is tied to his or her "average final compensation." RSA 100-A:5, I. A member's "average final compensation" is equal to the "average earnable compensation" in the member's three highest earning years of NHRS creditable service. RSA 100-A:1, XVIII. During the period of time relevant to this appeal, "earnable compensation" was defined in pertinent part as:

[T]he full base rate of compensation paid plus any overtime pay, holiday and vacation pay, sick pay, longevity or severance pay, cost of living bonus, additional pay for extracurricular and instructional activities or for other extra or special duty, and other compensation paid to the member by the employer, plus the fair market value of non-cash compensation such as meals or living quarters if subject to federal income tax.

RSA 100-A:1, XVII (2001) (amended 2008); *see* N.H. ADMIN. RULES, Ret 304.02(a).

Resolution of this petition requires statutory interpretation, which is a question of law that we review *de novo. Hudson v. Director, N.H. Div. of Motor Vehicles,* 155 N.H. 197, 198 (2007). "We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *McDonald v. Town of Effingham Zoning Bd. of Adjustment,* 152 N.H. 171, 174 (2005) (quotation omitted). "When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." *Bennett v. Town of Hampstead,* 157 N.H. 477, 483 (2008). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. We interpret a statute in the context of the overall statutory scheme and not in isolation." *Id.* (citation omitted).

The petitioner argues that the salary payments under section 9.9 fall within the language of RSA 100-A:1, XVII because the phrase "earnable compensation" is "very broad" in that it includes "other compensation paid to the member by the employer." We believe, however, that "compensation" under the statute does not include payment of the cash equivalent of a fringe benefit that must then be returned to the employer. Under the terms of section 9.9, the school district agreed to increase the amount of pay credited to the teachers by having their health insurance benefits "counted as if they were salary" and in return, the teachers agreed to retain their memberships in the school district's health plan and to subsequently reimburse the school district for the total amount of the increased pay. Thus, the teachers did not receive any additional salary but, rather, simply had their fringe benefits counted *as if* they were salary, to enhance their retirement pensions.

■ Pursuant to section 9.9, the teachers did not receive any actual increase in their annual compensation. Rather, they received an increase in the amount of their bi-weekly paychecks *conditioned upon their agreement* to repay the additional amounts to the school district by the end of the school year. Because the teachers were not authorized to keep any of the additional amounts, we conclude that the reimbursed payments do not

constitute "earnable compensation" under RSA chapter 100-A. As the hearings examiner found, "After the election of section 9.9 treatment, a member's salary appeared to increase because the number on the face of the paycheck and on the W2 went up. However, that money was never paid to the member in the sense that the member could keep it and spend it however he or she pleased. All of the apparent pay increase had to be returned to the Farmington School District." For these reasons, we hold that the mechanism employed in section 9.9 does not fall under the statutory definition of "earnable compensation" pursuant to RSA 100-A:1, XVII, and that "other compensation paid to the member by the employer" does not include employer-provided health insurance premiums for which the employee must reimburse the employer.

## III

The petitioner argues that pursuant to *Milette v. N.H. Retirement System*, 141 N.H. 342 (1996), the NHRS may not exclude the section 9.9 payments from earnable compensation without a properly promulgated rule. In *Milette*, the petitioner was entitled to severance pay upon her retirement, but the amount was not actually paid to her until a year after she retired. After the petitioner retired and her severance pay was not received for one year, the NHRS calculated her retirement award without including her severance pay in the calculation, resulting in an award substantially less than the petitioner expected. The board determined that the statute required payment of severance at termination or else it could not be included in the calculation of benefits. The issue before us was whether the petitioner's severance pay should be included in her "earnable compensation" for her last year of service pursuant to RSA 100-A:1, XVII. *Milette*, 141 N.H. at 343-44.

We held that the statute contained "no reference to any requirement that the employee's severance pay be paid 'at termination,' or by any other deadline, in order to be included in the calculation of the employee's retirement benefits." *Id.* at 345. Accordingly, because there was no time frame set forth in the statute for actual payment of such pay, the calculation of retirement benefits should take into account any severance pay whether received at retirement or some later date. The board argued that NEW HAMPSHIRE ADMINISTRATIVE RULES, Ret 310.03(b), which requires the board to consider in its calculations severance paid "after separation from service" should be understood as requiring severance pay to be paid within the "customary and usual" time frame in order to be included in the calculation of retirement benefits. We concluded that "[n]othing in the plain language of the rule distinguishes a delay of several weeks from a delay of one year in the actual payment of severance pay." *Id.* at 346. While we

"would accord deference to an agency's interpretation of its own rule where there was some ambiguity or inconsistency in the rule," we would not permit an agency "to add or delete requirements — without properly promulgating an amended rule — through the mere expedient of 'interpreting' a rule that is clear and unambiguous on its face." *Id.* at 346-47.

The petitioner relies upon *Milette* to argue that because there is nothing on the face of the statute to limit or exclude the payments made to the teachers pursuant to section 9.9, the NHRS may not interpret the statute to exclude such payments "without properly promulgating an amended rule." We disagree. As discussed above, we affirm the board's determination that the section 9.9 payments do not qualify as "earnable compensation" as the term is used in RSA 100-A:1, XVII. In making this determination, the board did not add or delete requirements contained in the plain language of the statute. Because we hold that *Milette* does not require the promulgation of a rule under the circumstances presented, we need not address the petitioner's arguments against the retrospective application of an amended rule.

We likewise disagree with the petitioner that section 9.9 can be characterized as an insurance buy-back provision whereby salary payments are made in lieu of health insurance coverage. *See Hitchcock v. Wash. St. Dept. Retire. Sys.*, 692 P.2d 834 (Wash. Ct. App. 1984). The school district already offers a separate buy-back provision, Policy #4234, for any employee who elects insurance coverage under a spouse's plan. Under the buy-back policy, any employee who elects not to receive medical and dental insurance through the school district receives a sum equivalent to twenty percent of the total premium the district would otherwise pay for that employee's health insurance coverage. The policy is "intended to relieve the District from paying unnecessary premiums while at the same time providing an attractive incentive to the employee." The employee may use these payments in any way he or she chooses. In contrast, under section 9.9, the teachers did not give up their health insurance benefits and were not "compensated" for any such loss. Rather, they were mandated to retain membership in the school district's health plan and to reimburse the school district for the full amount of the additional monies received.

## IV

The final issue is whether the NHRS was unjust and unreasonable in denying "any further relief" to the teachers. Specifically, the petitioner argues that the teachers should be reimbursed for the contributions they made to the retirement system.

As to the four teachers who had not retired before the appeal to the board, the NHRS reimbursed the school district the amount of money the

employees paid to cover the employer's share of the contribution to the retirement system. As to the four teachers who had retired, the board waived recoupment of the benefits received by them during the years that the NHRS was unaware of the section 9.9 payments. The board declined to refund retirement contributions to the four retired teachers, because

> [t]he [teachers] have all received pension benefits that they did not earn based on artificially inflated earnable compensation figures. The [teachers] have received total excess benefits that are 10 times the amount of their total excess contributions. The [teachers] have had any money collected from them in error returned to them in the form of excess pension benefits. They would be unjustly enriched if their contributions were returned to them again.

We cannot conclude that the board in so deciding "arrived at a conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Bailey*, 146 N.H. at 198. Rather, the board has acted in furtherance of its "fiduciary obligation to manage the NHRS for the benefit of its members and beneficiaries" in accordance with the statute. *Petition of Barney*, 142 N.H. 798, 802 (1998) (brackets omitted).

*Affirmed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.