Department of Safety
No. 2008-685

APPEAL OF JEAN-GUY'S USED CARS & PARTS, INC.
(New Hampshire Department of Safety)

Argued: April 7, 2009
Opinion Issued: June 17, 2009

*Munilaw Group*, of Epsom (*Tony F. Soltani* on the brief and orally), for the plaintiff.

*Kelly A. Ayotte*, attorney general (*Rosemary Wiant*, assistant attorney general, on the brief and orally), for the State.

BRODERICK, C.J. The plaintiff, Jean-Guy's Used Cars & Parts, Inc. (Jean-Guy), appeals the decision of an administrative hearings examiner for the New Hampshire Department of Safety (DOS) that Jean-Guy's use of its junk motor vehicle dealer license plates when responding to police tow calls violated RSA 261:129 (2004). We reverse.

The record supports the following facts. Jean-Guy is a registered junk motor vehicle dealership located in Pelham. *See* RSA 259:47 (2004) (defining junk motor vehicle dealer). In January 2008, Jean-Guy entered into an agreement with the Pelham Police Department to tow vehicles when called upon by the department to do so. Pursuant to the agreement,

Jean-Guy was called to tow vehicles for a variety of reasons, such as when a driver was arrested, after an accident, or when a vehicle broke down or was abandoned. In these instances, Jean-Guy dispatched a tow truck with junk dealer license plates to retrieve the vehicle, *see* RSA 261:123 (2004), and tow it to its dealership. At times, the tow calls generated business for Jean-Guy's auto body operation or resulted in Jean-Guy acquiring a vehicle for its junk motor vehicle business. On other occasions, the police called Jean-Guy to free a vehicle stuck in a ditch or perhaps a snow bank. In those instances, the vehicle was pulled clear of any hazard and was not towed from the scene.

At some point, a state trooper told Jean-Guy that its use of junk dealer license plates when responding to police tow calls was unlawful. Jean-Guy disagreed and was granted a hearing before the DOS. At the hearing, Jean-Guy argued that its use of junk dealer license plates when responding to police tow requests was lawful because the towing services comprised "a service in connection with [its junk motor vehicle] business" within the meaning of RSA 261:129. The State argued, however, that the fact that Jean-Guy occasionally engaged in junk motor vehicle business activities related to some of the vehicles it was called upon by the police department to tow did not bring the initial towing within the scope of junk motor vehicle business. The DOS found that the State's interpretation of the statute was reasonable and ruled that Jean-Guy's use of junk dealer license plates to perform the towing services violated RSA 261:129. Accordingly, it suspended Jean-Guy's junk dealership license for 60 days "with all 60 days held in abeyance for one year . . . based on good behavior to mean no further violations." Jean-Guy's motion for reconsideration was denied. This appeal followed.

When appealing a decision of the DOS pursuant to RSA 541:6 (2007), *see* RSA 260:6 (2004); N.H. ADMIN. RULES, Saf-C 2010.04, the appealing party bears the burden of proving that the decision of the hearings examiner was clearly unreasonable or unlawful, *see* RSA 541:13 (2007); *Appeal of N.H. Fireworks*, 151 N.H. 335, 338 (2004). The decision will "not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13. Findings of fact made by a hearings examiner are deemed *prima facie* lawful and reasonable. *Id.*; *Appeal of N.H. Fireworks*, 151 N.H. at 338.

The dispute before us involves the interpretation of RSA 261:129, which provides:

> An automotive recycling dealer shall not rent or otherwise use or permit to be used motor vehicles so registered [with motor vehicle

junk registration and plates], except for demonstration purposes or *service in connection with his business.*

(Emphasis added.) *See also* RSA 261:123 (prescribing persons who may obtain a "motor vehicle junk registration and plates"). There is no dispute that an "automotive recycling dealer" is the same as a "junk motor vehicle dealer" for the purpose of this appeal. *See* RSA 259:47 (2004) (defining "junk motor vehicle dealer"). In matters of statutory interpretation,

[w]e are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. We interpret a statute in the context of the overall statutory scheme and not in isolation.

*Petition of Farmington Teachers Assoc.*, 158 N.H. 453, 456 (2009) (quotations and citations omitted). Our review of a statute's meaning and intent is *de novo. Id.*

In ruling that Jean-Guy's use of junk motor vehicle dealer license plates to respond to the tow calls violated RSA 261:129, the DOS reasoned that:

Any business generated by [Jean-Guy] as a result of [its] towing activities based on calls from the Pelham Police Department is incidental to and not intrinsically connected with [its] initial towing of the vehicles. The towing activities themselves cannot be said to be service in connection with [Jean-Guy's] business when they arise from matters entirely unrelated to [its] business (arrests, pull-outs, accidents); that some of these calls may later incidentally lead to junk business for [Jean-Guy] does not make the tows themselves junk-related service.

(Quotation omitted.) Jean-Guy argues that the DOS erred by narrowly construing the statutory phrase "service in connection with his business" when it determined that Jean-Guy's response to the police tow calls must be intrinsically connected to its business in order to constitute a lawful use of junk license plates. According to Jean-Guy, it used the junk dealer license plates to benefit its junk motor vehicle business because each tow call represented a potential opportunity to bring a vehicle to its dealership and to purchase a salvageable or rebuildable vehicle or parts, or to install used parts into a damaged vehicle. The State contends, however, that Jean-Guy's towing services in this case are separate from its junk motor

vehicle business because it dispatched its tow trucks pursuant to the agreement with the Pelham Police Department and it had no relationship or arrangement with the vehicle owners that would further its junk motor vehicle business prior to dispatching its tow trucks.

The phrase "service in connection with his business" is not defined within the governing statutory scheme. Additionally, the statute considered as a whole does not inform us of the legislature's intended meaning of the phrase. Therefore, although a dictionary definition is not necessarily conclusive of statutory meaning, *see Zorn v. Demetri*, 158 N.H. 437, 440 (2009), we may rely upon the dictionary to provide insight into the legislature's intended meaning of language. The meaning of the term "connection" includes "the state of being connected or linked," "a relationship or association in thought (as of cause and effect, logical sequence, neutral dependence or involvement)," and "a social, professional or commercial relationship in a practical or active way." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 481 (unabridged ed. 2002). Thus, the term "connection" connotes a relationship between two reference points; here, the use of junk dealer license plates and a junk motor vehicle business. We note that the legislature did not specify the level of "connection" required by including "intrinsically" or some other modifier. Thus, we decline to construe the phrase "service in connection with his business" as narrowly as the State suggests. Rather, we interpret the statute to require only a practical commercial relationship between the use of junk dealer license plates and the junk motor vehicle business for which the plates were issued. *See* RSA 261:123.

We now review whether the decision of the DOS is clearly unreasonable, unjust or unlawful given the broad meaning of the phrase "service in connection with his business," as we have construed it today. The tow calls Jean-Guy received from the police included requests to remove abandoned vehicles, vehicles involved in accidents, and those that had broken down due to mechanical failure. Consequently, the calls placed Jean-Guy in direct contact with car owners who might be disposed to selling or repairing their vehicles. Indeed, the State concedes that on occasion, as a result of its towing activities, Jean-Guy was successful in furthering its junk motor vehicle business. While not every tow call involved an abandoned, damaged or broken down vehicle, nothing in the record suggests that Jean-Guy had advance knowledge of the nature of any particular tow request such that it could determine before sending a tow truck whether a particular call could be of practical commercial benefit to its business.

The State emphasizes that no relationship existed between Jean-Guy and the vehicle owners prior to any particular tow call and that Jean-Guy

provided the towing services pursuant to an agreement with the police department, a business activity that is separate and unrelated to its junk motor vehicle business. Nevertheless, by placing Jean-Guy in direct contact with a potential customer base, the tow calls generated practical commercial opportunities for Jean-Guy's junk motor vehicle business. Therefore, we hold that this record conclusively demonstrates that Jean-Guy used its junk motor vehicle license plates "in connection with [its] business" within the meaning of the statute. *See* RSA 261:129. Accordingly, we conclude that Jean-Guy has satisfied its burden of proving that the DOS decision was clearly unreasonable or unlawful.

*Reversed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.