Original
No. 2009-658

PETITION OF PAUL LUSSIER
(New Hampshire Retirement System)

Argued: June 15, 2010
Opinion Issued: November 24, 2010

*Molan, Milner & Krupski, PLLC,* of Concord (*Glenn R. Milner* on the brief and orally), for the petitioner.

*Foley Law Office,* of Concord (*Peter T. Foley* on the brief and orally), for the respondent.

BRODERICK, C.J. The petitioner, Paul Lussier, seeks review of a ruling of the board of trustees (board) of the respondent New Hampshire Retirement System (NHRS) that he was not entitled to service credit for a four-month period in 1994. We affirm.

The following undisputed facts are supported by the record. The petitioner worked as a police officer in the town of Derry (town) until his retirement in 2007 as a group II member of the NHRS. *See* RSA 100-A:5 (2001). In the course of preparing his retirement papers, the petitioner became aware that he had not received credit for service time for the month of November 1994. He had been out of work from August 2, 1994, to December 3, 1994, due to a non-work related disability, and had collected compensation directly from the town's insurance provider. By letter dated November 13, 2007, the petitioner wrote to the NHRS to request service credit for the month of November 1994. On December 6, 2007, the NHRS sent a letter to the town, with a copy to the petitioner, enclosing a "revised statement for the employer/member contributions and interest amounts due to an adjustment on reported wages for August 2, 1994 to December 03, 1994 that were not reported to [the NHRS] for [Paul Lussier]," and requesting payment of the enclosed bill. The petitioner appealed this decision.

Following a hearing, the hearings examiner concluded that because the statute in effect during the four months at issue in 1994 only allowed school district employees to accrue service credit during periods of short-term disability, the petitioner was not entitled to benefits for those four months. The hearings examiner recommended that for the period August 2, 1994, through December 3, 1994, the board return all contributions made by the petitioner or the town, remove any service credit granted to the petitioner from his creditable service, and recalculate his final benefit without such creditable service. The hearings examiner also recommended that the board not recoup the annuity payments already paid to the petitioner, including the months of disability credit, because the petitioner was not at fault for the error in his records or for the higher payments resulting from

it. The board approved the recommendation, and the petitioner unsuccessfully moved for reconsideration. The petitioner then filed his petition for a writ of certiorari.

The petitioner argues that the NHRS committed legal error because: (1) the language of RSA 100-A:5 requires that the law in place at the time of a member's retirement apply to the pension application; (2) New Hampshire law requires that remedial legislation apply to acts occurring prior to its enactment; and (3) it failed to provide him with sufficient due process. "Our standard of review is whether the board acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which cannot legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Farmington Teachers Assoc.*, 158 N.H. 453, 455 (2009) (quotation omitted).

The petitioner first argues that RSA 100-A:5, II(b) requires that "creditable service" be calculated "[u]pon service retirement," and that RSA 100-A:4, II (2001) mandates that it is the number of years of creditable service a member has "at retirement." Therefore, according to the petitioner, the current version of RSA 100-A:4, III-a (Supp. 2009), which allows for time spent out of work on disability to count as creditable service for group II members, must apply. We disagree.

Resolution of this petition requires statutory interpretation, which is a question of law that we review *de novo. Petition of Farmington Teachers Assoc.*, 158 N.H. at 456. "We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used." *Id.* (quotations and citation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. We interpret a statute in the context of the overall statutory scheme and not in isolation." *Id.* (quotation omitted).

■ The NHRS is a "qualified pension trust," *see* RSA 100-A:2 (2001), funded by both member and employer contributions, *see* RSA 100-A:16, I-II. *Petition of Concord Teachers*, 158 N.H. 529, 530 (2009). Upon retirement, eligible members receive a "service retirement allowance" that is calculated, in part, based upon whether the member is a group I or group II member. *See* RSA 100-A:5, I (group I service retirement); RSA 100-A:5, II (group II service retirement). RSA 100-A:5, II, setting forth the "service retirement benefits" for group II members, provides in part,

(a) Any group II member in service who has attained age 45 and completed 20 years of creditable service . . . may retire on a service retirement allowance upon written application to the board of trustees . . . .

(b) Upon service retirement, a group II member shall receive a service retirement allowance which shall consist of:

(1) A member annuity which shall be the actuarial equivalent of his accumulated contributions at the time of retirement; and

(2) A state annuity which, together with his member annuity, shall be equal to 2-1/2 percent of his average final compensation multiplied by the number of years of his creditable service not in excess of 40 years.

A member's "creditable service" is defined as "prior service plus membership service, as provided in RSA 100-A:4." RSA 100-A:1, XVI (Supp. 2009).

Regarding "creditable service," RSA 100-A:4, III(a) provides that the board "shall fix and determine . . . how much service in any year is equivalent to one year of service, but in no case shall it allow credit for a period of absence without pay of more than a month's duration . . . ." From its enactment in 1977, until its amendment in 1995, RSA 100-A:4, III-a provided:

Notwithstanding the provisions of paragraph III of this section, any *school district member* who is absent without salary, due to a disability for which he is compensated by a salary continuance plan provided wholly or partially by the school district, shall be allowed continued service credit in the retirement system until such time as he returns to work or retires provided the member continues to pay the regular member contributions required under RSA 100-A:16 and further provided that the member or the school district pays the required employer and state contributions as are in effect from time to time or that both such parties pay said contributions in any proportion mutually agreed upon. The contributions so paid shall be remitted to the retirement system in accordance with remittance procedures of the board of trustees. In no case, however, shall the service credit, from the date on which the member so absents himself to the date on which he makes one of the above elections, exceed 5 years.

RSA 100-A:4, III-a (1990) (emphasis added). Effective July 1, 1995, the statute was amended to provide:

Notwithstanding the provisions of paragraph III of this section, *any group I or group II member* who is absent without salary due to a disability for which the member is compensated by a salary continuance plan which is funded wholly or partially by the member's employer shall continue to accrue creditable service until such time as the member returns to work, dies, retires or is no longer compensated by such salary continuance plan. Amounts received under such salary continuance plan are earnable compensation to the extent attributable to employer funding and shall be subject to the regular member contributions required under RSA 100-A:16 and the required employer and state contributions, if applicable, as are in effect from time to time. All such contributions shall be remitted to the retirement system in accordance with remittance procedures of the board of trustees. Any group I or group II member who is absent without salary due to a disability for which the member is compensated by a salary continuance plan which has not been funded in whole or in part by the member's employer shall not accrue any creditable service for the period of such absence. Further, amounts received from such salary continuance plan shall not be included as earnable compensation for purposes of the retirement system.

RSA 100-A:4, III-a (2001) (emphasis added). Thus, prior to the 1995 amendment, only a school district member who was absent due to a disability, for which he or she was compensated by an employer-provided salary continuance plan, was allowed continued service credit in the retirement system. Under the 1995 amendment, the benefit was made available to all group I and group II NHRS members, and contributions on salary continuance payments were made mandatory rather than optional.

■ Pursuant to the plain language of the statutory provisions, while RSA 100-A:5, II establishes that "creditable service" is calculated, as an accounting measure, "upon service retirement," a group II member is only entitled to creditable service that accrued over the course of the member's employment. During the period of time in 1994 that the petitioner was out of work on short-term disability, no creditable service accrued to him during those four months.

■■ The petitioner argues that RSA 100-A:4, III-a is "a remedial piece of legislation" and, as such, applies to his case "because the law was effective upon [his] retirement and while his retirement application was pending." In other words, the petitioner contends that the statute as amended in 1995 applies retroactively to 1994.

As a general rule, statutes are to be applied prospectively. Common sense dictates that this be so. Because every person is presumed to know the law and, therefore, to organize his or her conduct and affairs accordingly, notice or warning of a change in the law should be given in advance of such change. Moreover, there is a presumption of prospectivity when a statute affects substantive rights. This presumption of prospectivity is reversed, however, when the statute is remedial in nature or affects only procedural rights. In that case, retrospective application is not unjust.

*Eldridge v. Eldridge*, 136 N.H. 611, 613 (1993) (citations omitted). We have previously held that the statutory entitlement of eligible public employees to retirement benefits pursuant to RSA chapter 100-A is a substantive right. *Petition of Concord Teachers*, 158 N.H. at 538-39. Therefore, we presume that the legislature intended that RSA 100-A:4, III-a as amended in 1995 apply prospectively.

██ As the hearings examiner correctly determined,

The change in the wording of the statute . . . shows no intent that it be applied retrospectively. It creates a new, substantive right to receive service credit for time out of work on an employer-sponsored disability plan for 3 additional membership classifications; group I employees and group II police and firefighters. Absent a specific provision to the contrary, legislation affecting a substantive right creates a presumption that the provision is meant to be applied prospectively.

Accordingly, the hearings examiner concluded that because the petitioner's absence from work occurred before the board had statutory authority to grant service credit to group II members on short-term disability, the granting of service credit to him was erroneous. We affirm its conclusion.

██ The petitioner's final argument is that the NHRS failed to provide him with sufficient due process "when it resolved his appeal on a legal basis not noticed for hearing." According to the petitioner, because the issue he raised before the board was whether the month of November 1994 should be credited to his retirement pay, it was "inherently unfair" for the board to include the three additional months it determined were credited in error. The petitioner's due process claim, however, is not supported by adequately developed legal argument, nor does he cite either the State or Federal Constitution. "Judicial review is not warranted for complaints regarding adverse rulings without developed legal argument, and neither passing

reference to constitutional claims nor off-hand invocations of constitutional rights without support by legal argument or authority warrants extended consideration." *Appeal of Omega Entm't*, 156 N.H. 282, 287 (2007).

■ Moreover, we note that upon becoming aware of the error in the petitioner's records, the board was authorized to correct it. Pursuant to RSA 100-A:27 (2001):

> Should any change or error in the records result in any member or beneficiary receiving from the system more or less than he would have been entitled to receive had the records been correct, the board of trustees shall have the power to correct such error, and to adjust as far as practicable the payments in such a manner that the actuarial equivalent of the benefit to which such member or beneficiary was correctly entitled shall be paid.

The petitioner makes no argument that this statute does not apply under these circumstances.

*Affirmed.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.